Robert Minette #11353-090
Name and Prisoner/Booking Number

United States Penitentiary
Place of Confinement

P.O. Box 24550
Mailing Address

Tucson AZ 85734
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Robert Minette,
(Full Name of Plaintiff)

Plaintiff,

v.

(1) Federal Bureau of Prisons,
(Full Name of Defendant)

(2) _____,

(3) _____,

(4) _____,
Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CV-23-456-TUC-JAS-PSOT

CASE NO. _____
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT BY A PRISONER**

☑ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☐ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☑ 28 U.S.C. § 1331; ~~Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971)~~
   ☑ Other: _____

2. Institution/city where violation occurred: USP Tucson, AZ

## B. DEFENDANTS

1. Name of first Defendant: __Federal Bureau of Prisons__. The first Defendant is employed as: _____ at _____.
   (Position and Title)                              (Institution)

2. Name of second Defendant: _____. The second Defendant is employed as: _____ at _____.
   (Position and Title)                              (Institution)

3. Name of third Defendant: _____. The third Defendant is employed as: _____ at _____.
   (Position and Title)                              (Institution)

4. Name of fourth Defendant: _____. The fourth Defendant is employed as: _____ at _____.
   (Position and Title)                              (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?     ☐ Yes     ☐ No

2. If yes, how many lawsuits have you filed? _____. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____

   b. Second prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

2

## D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: __Violation of the 8th Amendment__.

2. **Count I.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☑ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   Plaintiff is serving a sentence of imprisonment at the U.S. Penitentiary in Tucson, Arizona ("USP Tucson") which is operated by defendant Federal Bureau of Prisons ("BOP").

   The BOP owes plaintiff a general duty of care pursuant to federal law: 18 U.S.C. 4042.

   USP Tucson is designated as a "Health Care Provider Shortage Area" by the Health Resources and Services Administration and lacks sufficient staff in its medical department to provide adequate healthcare. On average an inmate in SHU who submits a written request for medical treatment will not be triaged for 2-4 months as a result of the understaffing.

   (Continued on page 7)

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   See Sec. 3 and continuing pages

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☑ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count I?  ☐ Yes  ☑ No
   c. Did you appeal your request for relief on Count I to the highest level?  ☐ Yes  ☑ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. __Retaliatory threats, lack of forms__

3

**COUNT II**

1. State the constitutional or other federal civil right that was violated: Violation of the 8th Amendment.

2. Count II. Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☒ Other: Mental Health

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

Plaintiff hereby reasserts all supporting facts used in Count I herein as relevant background.

There is not a single study of solitary confinement wherein non-voluntary confinement that lasted for longer than 10 days failed to result in negative psychological effects. These studies show that prolonged segregation can result in paranoia, hallucinations, suicidal ideation, feelings of impending doom, decline in mental functioning, insomnia, nightmares, PTSD, self-mutilation, weight loss, obsessional thinking.

One study, by a firm hired by BOP to analyze its systemic use of segregation – CNA Associates – determined in doing so 10 years ago that BOP was failing to correct its misuse of segregation systemwide. This study was commissioned after USP Tucson inmate Jeremy Pinson brought a class-action lawsuit (Continued on page 11)

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   Same as 3 above, Count I

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☐ Yes ☒ No
   b. Did you submit a request for administrative relief on Count II? ☐ Yes ☒ No
   c. Did you appeal your request for relief on Count II to the highest level? ☐ Yes ☒ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. Same as Count I

4

# COUNT III

1. State the constitutional or other federal civil right that was violated: _Reserved For Later Amendment_

2. **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☐ Yes   ☐ No
   b. Did you submit a request for administrative relief on Count III?   ☐ Yes   ☐ No
   c. Did you appeal your request for relief on Count III to the highest level?   ☐ Yes   ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

## E. REQUEST FOR RELIEF

State the relief you are seeking:

1. Injunction - enjoining (1) BOP's continued inadequate treatment of plaintiff's broken finger (2) BOP's continued failure to have plaintiff examined and treated by a hand and orthopedic surgeon (3) BOP's continued failure to fully staff its Health Services departments, (4) BOP's continued use of prolonged segregation of inmates (5) BOP's practice of pepper spraying suicidal or mentally ill inmates in segregation.

2. Award plaintiff all costs and fees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  9-28-23
             DATE

SIGNATURE OF PLAINTIFF
Robert Minette

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach no more than fifteen additional pages. But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

Supporting Facts (Cont'd from Page 3):

On July 4, 2023 at 2:30 p.m. Officer Rivera, a BOP employee, violated BOP policy and regulations by allowing 3 inmates (one of whom was not assigned to plaintiff's unit) to attack plaintiff. The attack left plaintiff with a fractured finger. The medical assessment that day was conducted by Nurse Ramon Estrada who concluded plaintiff's finger was likely broken as it was swollen and very discolored, but could not on his own perform an x-ray. Estrada provided no x-ray nor any pain medication on July 4th, 2023 nor did anyone else.

On July 6, 2023 plaintiff was taken for x-rays that determined his finger was indeed broken. No further action was taken that day, nor was pain medication supplied.

On July 11, 2023 plaintiff was examined by Nurse Practitioner Bulger who informed plaintiff verbally that he was to be put on pain medication and a splint applied to his broken finger.

On July 12, 2023 having received no splint or pain medication began pleading with Lieutenant S. Karlan about the pain and discomfort which irritated Lt. Karlan. Karlan then ordered plaintiff moved from a general housing tier (A-Range) to a de facto disciplinary housing tier (C-Range) into solitary confinement.

Page 7

At the time Karlan did so, he knew from plaintiff's own statements that he had a history of depression, anxiety, and suicidal thoughts (and was required by BOP policy to place plaintiff under observation until evaluated by a psychologist for a "Suicide Risk Assment").

A couple hours after being moved to solitary confinement, plaintiff placed a ligature around his neck and began to hang himself. An officer, M. Ruiz, during his round on C-Range and saw plaintiff hanging. Ruiz then opened a "food slot" in plaintiff's cell and emptied a can of Oleoresin Capsicum spray all over plaintiff's body triggering severe pain, loss of sight and smell, coughing, respiratory distress, and vomiting. Ruiz did not confine his deployment of chemical agents for a 3-second burst as BOP trained him to do so, he emptied the entire can into plaintiff's secured cell.

At 3:25 p.m. on July 12, 2023 Nurse Rebekah Miller saw plaintiff covered in pepper spray, but did not begin the decontamination of plaintiff until 4:30pm despite her observing plaintiff vomiting and eventually losing consciousness.

Plaintiff was then moved to a suicide watch area but without the decontamination shower Miller directed plaintiff received in an oral instruction to the Lieutenants and other officers. The pain and burning of the chemical agent left plaintiff in that state for 16 hours, disrupting his ability

to sleep throughout the night. The staff also did not allow plaintiff food or water during his 16 hours of being restrained and on suicide watch.

Upon his psychological evaluation, prison psychologist Dr. Polenski told plaintiff that the only way she would permit him a decontamination shower was to promise her he'd never "come to suicide watch and waste my time." Plaintiff agreed to her demand under duress.

On July 14, 2023 a splint was placed on plaintiff's finger by Nurse Miller, at which time plaintiff asked Miller for a "bottom bunk pass" to alert custody staff that plaintiff could not climb the ladder to the top bunk with a broken finger. The request was denied without explanation.

On Aug. 2nd, 2023 plaintiff was x-rayed again and informed it showed no healing of his broken finger. Plaintiff told Burger again that he needed a bottom bunk pass, which was then issued with a 4-week expiration date.

On Aug. 29th, 2023 the nurse assigned to SHU refused to pass out pain or any other medications to the entire Special Housing Unit. The Bureau of Prisons was aware of its medical staff not passing out inmates' medications prescribed by a physician in a lawsuit before this Court earlier in 2023 (see:

9

Pinson v. Estrada, No. 18-CV-00535-RM (D.Ariz.)) but took no steps to correct the frequent issue of inmates not receiving clinically necessary medications, not the plaintiff's pain medication, not even insulin or life-saving HIV medications (i.e., inmate John Dobbs) for non-medical staffing reasons.

Plaintiff's finger remains broken and painful, and since 7-4-23 he has sought proper treatment from NP Bulger and Nurses Quesada, Norgren, Cosme, Crow and Nurse Practitioner Dana Marshall, every day at daily pill line, and as of 9-25-23 still has not received an examination by a Hand and/or Orthopedic surgeon due to the understaffing and backlogged wait list that - like plaintiff - leave BOP inmates for months, or even as much as 5 years, for their procedure, test, or consultation to actually occur. Plaintiff's treatment was not consistent with community standards of care.

Plaintiff's inability to get adequate medical care is a matter the BOP has been sued for repeatedly in this Court = See, e.g., Tillery v. Silva, Case No. 15-CV-00181-CKJ (D.Ariz.); James Cobler v. United States, No. 19-CV-00384-RM (D. Ariz.); Pinson v. Carvajal, No. 02-CV-00298-RM (D.Ariz.) and many others. It is not known if BOP took any steps to improve healthcare after settling or defending the case in the years prior to plaintiff's own experience that began July 4, 2023.

Supporting Facts (Count II):

in federal court that settled in 2016. (See Case No. 12-CV-01570-RPM-MEH (D. Colo.).

After the July 4, 2023 attack plaintiff needed mental health and trauma counseling. The flashbacks and nightmares triggered panic attacks had a suicide attempt. Each day of his life plaintiff struggles with depression and suicidal ideation that have grown exponentially worse in segregation

The BOP's policies call for plaintiff to be evaluated by a psychologist regularly, pursuant to 28 C.F.R. 541.32(b) and Program Statement 5270.11 "after every 30 days".

The BOP's policy also requires "a personal interview, when administrative detention continues beyond 30 days" and that said assessment be "submitted to the SRO in a written report with a copy to the inmate's central file" (P.S. 5270.11 at 16) and that the assessment include (1) "The inmate's adjustment to surroundings" (2) "The threat the inmate poses to self" (id.).

At USP Tucson, that policy is complied with by an RHU psychologist (Dr. K. Hermosillo) by walking each

11

housing tier, looking into an inmate's cell for 1-2 seconds and then counting that as a "psychiatric or psychological assessment under 5270.11 at 16). The psychologist does not conduct plaintiff's (or anyone else's) 30 day reviews as a "personal interview", she instead does a "drive by" in inmate parlance. She will not stop at a cell unless the occupant asks them to. The "personal interview" at the cell door requires plaintiff to discuss his mental health in the presence of 20 to 40 inmates, which can and does result in embarrassment, humiliation, loss of privacy, teasing by other inmates, even threats for perceived "weakness." As a result, most inmates do not speak at the 30 day interaction.

The power to release an inmate from segregation rests solely in the discretion of Mark Gutierrez, USP Tucson's Warden, pursuant to 28 C.F.R. 541.33, and in policy the Warden is to assess information from medical and psychology staff on a weekly basis when the "SHU Meeting" is held as required by 5270.11 (See: Page 8: "A multidisciplinary team that includes, at a minimum, Institution Executive Staff, Correctional Services, Unit staff, Health Services, and Psychology Staff reviews the inmate's initial and ongoing placement in SHU.").

Furthermore, the policy states on Page 6, "The Institution must generate a regional referral for each inmate in post-disciplinary

detention in excess of 90-days that includes case-specific information stating why the inmate is not appropriate for return to general population or immediate transfer. The Regional Director must submit a recommendation for post-disciplinary detention in excess of 90 days and every additional 60-days thereafter to the "Assistant Director, Correctional Programs Division for concurrence."

At USP Tucson, inmates can spend months or years in SHU. Several inmates presently in the SHU for one year and more (i.e. Jeremy Pinson, Ernesto Zaragosa-Solis, Amadeo Rodriguez) do not and have not received (1) a 90-day report on their SHU status (2) no Regional Director recommendation, nor (3) concurrence of their status by the Asst. Director as required by policy, and the exact same is now occurring to plaintiff. The USP Tucson Warden, like in the cases of Pinson, Zaragosa-Solis and others, regularly locks disfavored inmates (i.e. jailhouse lawyers) into SHU, refuses to exercise his 28 C.F.R. 541.33 to release them from SHU, and the practice leaves inmates like them — and the plaintiff — with psychologists urging their immediate release from SHU to prevent psychological harm. The Warden does not, and will not, agree to or carry

13

out any recommendations of the Psychology Staff to attempt to mitigate the psychological harm of prolonged segregation.

Plaintiff is not the first to self-harm or attempt suicide. At the bench trial of Pinson v. United States, Case No. 19-CV-00401-RM (D. Ariz., Sept. 13, 2023) staff employed at USP Tucson testified to the dozens of acts of self harm or attempted suicide in the USP Tucson SHU. Even when psychology recommends, on clinical grounds, to not keep inmates like plaintiff in prolonged segregation, Warden Gutierrez does not take action upon that. The BOP does not compel Gutierrez to do so either, despite its policies.

The conditions in SHU plaintiff has endured since 7-4-23 are harsh and restrictive. Inmates have no access to educational or rehabilitative programming. Inmates may use the phone for 15 minutes per month. Inmates cannot watch television, and all incoming publications are seized in the mailroom whether in book or magazine format. As the publication ban is presently applied even a Holy Bible would be seized before plaintiff could receive it. Outdoor exercise is the only out-of-cell activity available in SHU, pursuant to 28 C.F.R. 541.31(g). But that exercise is regularly cancelled. Plaintiff has never, since 7-4-23, received the full "five hours per week" mandated by 28 C.F.R. 541.31(g) nor has any other inmate. And while

14

BOP policy states restriction of such exercise can only be denied "by order of the Warden" (541.31(g)) and "only" for when an "inmate's activities pose a threat to the safety, security, and orderly operation of a correctional facility" and only by "the Warden in writing" (P.S. 5270.11 at Page 12) recreation is in SHU regularly taken away by officers who simply ignore the policy. An officer can deny an inmate recreation for arbitrary and capricious reasons. It can be taken if an inmate has a cup on a desk, or for not having a shirt on, for using the toilet to defecate at the time staff are signing up for the day's outdoor exercise at 5:30am, or even for being more than 12 inches from the cell door. The goal of the officers doing so is to minimize the amount of work involved in escorting inmates to and from regular outdoor exercise.

The lack of mental and emotional stimulus, outdoor exercise, confinement to segregation continues to impact plaintiff's mental health negatively. The plaintiff is depressed, anxious, and often contemplates suicide. Each day in Segregation plaintiff feels hopeless and helpless.

15